IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IO GROUP, INC., | No. C 04-4875 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket No. 8] |
| BIC PRODUCTIONS, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff Io Group, Inc.'s application for default judgment against Defendant BIC Productions ("Defendant BIC") [Docket No. 8]. Having fully considered Plaintiff's application, the allegations contained in the complaint, the declarations and exhibits filed in support of Plaintiff's application, the factors enunciated in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), and for good cause appearing, the Court hereby GRANTS Plaintiff's application as set forth in this Order.

## BACKGROUND

Plaintiff Io Group, Inc. ("Plaintiff") is a California corporation doing business as "Titan Media," with its principal place of business located at 121 Capp Street, Suite 200, San Francisco, California 94110. Compl. ¶ 2. Plaintiff produces and distributes adult entertainment products, including Internet website content, photographs, videos, and DVDs. *Id.* ¶ 10.

Defendant BIC Productions ("Defendant BIC" or "BIC") is a California entity that produces and distributes gay adult movies and runs and operates a website located at www.bicprod.com. *Id.* ¶ 4.

Defendant Patrick Lawlor ("Defendant Lawlor") is an individual who resides in Pennsylvania. He appears as a model/actor in adult films produced by BIC. *Id.* ¶ 3. He also owns and operates a website located at www.glovdcopsf.com. *Id.*

Plaintiff alleges that Defendant BIC and Defendant Lawlor illegally copied, distributed and publicly displayed fifty-seven (57) images that belong to Plaintiff and for which Plaintiff holds valid Certificates of Copyright Registration. *Id.* ¶¶ 23, 29. Specifically, Plaintiff alleges that forty-nine (49) acts of infringement occurred from the base domain www.bicprod.com, which is registered to Defendant BIC, and eight (8) acts

of infringement occurred from the base domain www.glovdcop.sf.com, which is registered to Defendant Lawlor. *Id.* ¶ 24-25. Twenty-six of the infringed photographs contained Plaintiff's conspicuously displayed copyright mark. *Id.* ¶ 26.

On November 6, 2002, Plaintiff sent to Defendant BIC a take-down notice and a letter demanding that BIC, and each and every person or company affiliated with BIC, cease and desist illegally copying, publishing and publicly displaying Plaintiff's works. Declaration of Gill Sperlein ("Sperlein Decl.") ¶ 8; Exs. A, B. The November 6, 2002 letter explained that Plaintiff believed that BIC had used at least forty-nine (49) of Plaintiff's copyrighted images and that BIC's acts of infringement were willful. *Id.* at Ex. B. Plaintiff warned BIC that it could be liable for up to $150,000 per infringed work. *Id.* ¶ 8. Through counsel, Plaintiff attempted to reach a compromise and avoid litigation. *Id.* at Ex. B. BIC removed Plaintiff's images from the website but was unwilling to compensate Plaintiff for use of the images. *Id.* ¶ 8.

Plaintiff filed a Complaint against BIC and Lawlor on November 16, 2004. On November 17, 2004, Plaintiff served on BIC a copy of the summons and complaint along with a request that it waive service of process, two copies of a completed waiver for its execution and a self-addressed, stamped envelope. Sperlein Decl. ¶ 11. BIC did not execute or return the waiver. *Id.* ¶ 12. Subsequently, Plaintiff engaged a process server who served Defendant BIC by substitute service, proof of which Plaintiff filed with this Court. *Id.* ¶ 13. A response became due on February 4, 2005. On February 9, 2005, Plaintiff delivered to Defendant BIC by United States mail and by e-mail a letter reminding BIC that a response was past due. *Id.* ¶ 14. Defendant BIC failed to serve an answer or other response to the Complaint. *Id.* ¶ 15. Upon Plaintiff's request, the Clerk entered default on February 14, 2005. *Id.* ¶ 16.

## LEGAL STANDARD

The decision of whether to grant or deny a request for default judgment lies within the sound discretion of the district court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (affirming denial of motion for default judgment and *sua sponte* dismissal of plaintiff's claims). In exercising its discretion, the district court is guided by consideration of the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the

2

    default was due to excusable neglect; and (7) the strong policy underlying the Federal
    Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (affirming denial of motion for default judgment where district court had serious reservations concerning the substantive merit of the claims, a large amount of damages were at issue, and there was a factual dispute with regard to the matters alleged in the pleadings).

## ANALYSIS

**A. The *Eitel* Factors**

  **1. Substantive Merits and Sufficiency of the Complaint**

The first two *Eitel* factors are (1) the merits of plaintiff's substantive claim, and (2) the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. These two factors require that a plaintiff "state a claim on which the [plaintiff] may recover." *Kloepping v. Fireman's Fund*, 1996 U.S. Dist. LEXIS 1786, 1996 WL 75314, at *2 (N.D. Cal. 1996). Since default has been entered against Defendant BIC, the factual allegations of the Complaint, with the exception of the allegations regarding damages, will be taken as true. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

    **a. Copyright Infringement**

Plaintiff alleged claims for copyright infringement, contributory copyright infringement and vicarious copyright infringement.

The Copyright Act, 17 U.S.C. § 106, protects the owner of a copyright by granting him or her exclusive rights to "reproduce, distribute, and publicly display copies of the work." *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 799 (9th Cir. 2003) (citation omitted). "A prima facie case of copyright infringement by reproduction is established by showing ownership by the plaintiff and copying by the defendant." *Id.*

The Complaint alleges that Plaintiff holds properly registered copyright certificates for the forty-nine (49) photographs that it claims BIC reproduced. Compl. ¶¶ 24, 29. The Complaint further alleges that BIC infringed these works by reproducing, distributing, and publicly displaying the works on the www.bicprod.com website without the proper approval or authorization of Plaintiff. *Id.* ¶ 34. Accordingly, Plaintiff has stated a

3

claim for copyright infringement. Plaintiff has also stated claims for contributory and vicarious copyright infringement.[1] Compl. ¶¶ 42-45, 47-50.

### b. Right to Publicity

The Complaint also alleges a claim for misappropriation of the right to publicity under both common law and California Civil Code § 3344.

Under California law, an individual's right to publicity is invaded if another appropriates for his advantage the individual's name, image, identity or likeness. *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1918 (1996). "This is an actionable tort under both common law and Civil Code section 3344." *Id.*

"A common law cause of action for appropriation of name or likeness may be pleaded by alleging (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Id.* (citations omitted). "In addition, to plead the statutory remedy provided in Civil Code section 3344, there must also be an allegation of a knowing use of the plaintiff's name, photograph or likeness for purposes of advertising or solicitation or purchases." *Id.* "Furthermore . . . [a] 'direct' connection must be alleged between the use and the commercial purpose." *Id.*

The Complaint claims that Plaintiff's copyrighted works embody images of actors all of whom executed written agreements with Plaintiff through which Plaintiff became the exclusive proprietor of the actors' rights of publicity in the performances embodied in Plaintiff's creative works. *Id.* ¶ 51; *see KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362, 368 (2000) (where models assigned right to publicity to owner of copyrighted photo, copyright owner could bring claim under section 3344 for unauthorized use of the model's human likeness). The Complaint further alleges that BIC displayed photographs of the actors for commercial gain without Plaintiff's consent. *Id.* ¶ 55. As a direct and proximate result of BIC's conduct, Plaintiff claims that it was damaged. *Id.* ¶ 56. The Complaint further claims that BIC acted in conscious disregard of Plaintiff's

---

[1] Contributory infringement requires that the secondary infringer "know, or have reason to know" of direct infringement. *Adobe Sys. v. Canus Prods.*, 173 F. Supp. 2d 1044, 1048 (C.D. Cal. 2001). Vicarious liability exists when (1) a defendant has the right and ability to supervise the infringing conduct and (2) the defendant has an obvious and direct financial interest in the infringement. *Id.* The allegations of the Complaint satisfy all of these requirements.

4

rights. *Id.* ¶ 57. Thus, Plaintiff has stated a claim for both common law and statutory misappropriation of the right to publicity.

Accordingly, the Court finds that the first two *Eitel* factors are satisfied.

### 2. Amount at Stake

Under the third *Eitel* factor, the Court must consider the amount of money at stake in relation to the seriousness of Defendant BIC's conduct. Here, Plaintiff is seeking $367,500 in statutory damages in relation to its copyright claim and $54,000 in statutory damages in relation to its statutory misappropriation of the right to publicity claim. Given that Defendant BIC never appeared in this action, and discovery was never taken, it is unknown how this amount correlates with BIC's ill-gotten gains. Plaintiff, however, has submitted evidence sufficient to show that it sells its images at the prevailing rate of $2,500 per image. Webb Decl. ¶ 8; Compl. ¶ 13.[2] Plaintiff also states that it uses these images to drive subscriptions to its own website and thus illegal distribution of these images decreases the overall value of its site. Webb Decl. ¶ 5. The illegal distribution of Plaintiff's works also decreases the uniqueness of the works and damages Plaintiff's goodwill, thereby increasing the amount of Plaintiff's loss. In light of the circumstances, this Court finds that Plaintiff's request of $2,500 per image is reasonable.

Further, the amount of damages requested by Plaintiff are within the range that is specifically authorized by statute. *See* 17 U.S.C. § 504 (providing that court may award statutory damages in the amount of $750.00 to $30,000.00 per work, increased to $150,000 in cases of willful infringement); Cal. Civ. Code § 3344(a) (providing that court may award statutory damages in the amount $750 per photograph). Given this, the Court finds that the third *Eitel* factor has been met.

### 3. Possibility of Prejudice

The fourth *Eitel* factor considers whether Plaintiff will suffer prejudice if default judgment is not entered. Potential prejudice to Plaintiff favors granting a default judgment. Considering BIC's refusal to cooperate with this case, if this Court were to deny Plaintiff's motion for default judgment, Plaintiff would likely be without other recourse for recovery. Thus, the fourth *Eitel* factor is satisfied.

---

[2] When $2,500 per image is multiplied by 49 images, the result $122,500. When this amount is trebled, it results in Plaintiff's requested damages of $367,500.

5

6

### 4. Possibility of Dispute

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. Upon entry of default, all well-pleaded facts in the Complaint are taken as true. Accordingly, no genuine dispute of material facts would preclude granting Plaintiffs' motion.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. Plaintiff sent BIC a cease-and-desist notice and letter on November 6, 2002 regarding the conduct alleged in the instant action. Sperlein Decl. ¶ 8. BIC was also properly served with the summons and Complaint on January 15, 2005. *Id.* ¶ 13. Further, on February 9, 2005, Plaintiff delivered to BIC a letter and e-mail reminding BIC that its response to the Complaint was past due. *Id.* Finally, BIC was served with the instant application. Neither Plaintiff nor the Court has received any response from BIC. Thus, considering the numerous opportunities for BIC to participate in this action, and its failure to do so, the possibility of excusable neglect in this action is remote.

### 6. Policy for Deciding on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 728 F.2d at 1472. However, "this preference, standing alone, is not dispositive." *Kloepping*, 1996 U.S. Dist. LEXIS 1786, 1996 WL 75314, at *3. Here, Defendant BIC's failure to answer the Complaint makes a decision on the merits impractical, if not impossible. Under Federal Rule Civil Procedure 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action. Thus, "the preference to decide cases on the merits does not preclude a court from granting default judgment." *Kloepping*, 1996 U.S. Dist. LEXIS 1786, 1996 WL 75314, at *3.

In light of the foregoing analysis, the Court concludes that it may properly enter default judgment against Defendant BIC.

## B. Damages

Since default judgment is proper, the Court must next assess Plaintiff's requested award of damages. Here, Plaintiff seeks monetary damages for two claims: (1) copyright infringement; and (2) statutory misappropriation of the right to publicity under California Civil Code § 3344. Plaintiff seeks statutory damages

in the amount of $367,500 for defendants' willful infringement of plaintiff's copyrighted works and statutory damages in the amount of $54,000 for statutory misappropriation of the right to publicity.

### 1.   Copyright Claim

In an action for copyright infringement, the copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement. Alternatively, at the election of the plaintiff, the Court may award statutory damages in the amount of $750 to $30,000 per work as it considers just, increased to $150,000 in cases of willful infringement. 17 U.S.C. § 504.

In this case, Plaintiff argues that it should be awarded statutory damages in the amount of $2,500 per work because it is too difficult to determine the amount or extent of BIC's illicit profits or the actual amount of Plaintiff's loss. Specifically, Plaintiff contends that it cannot determine the amount of BIC's profits because BIC failed to respond to this action. Plaintiff also alleges that its actual losses cannot be readily determined given that the value of Plaintiff's works lies in their uniqueness and given that BIC's actions have resulted in harm to Plaintiff's reputation. Plaintiff further notes that BIC apparently took no precautions to prevent further distribution of Plaintiff's works, and thus BIC may have allowed Plaintiff's images to be further distributed to an unknown number of other persons. Webb Decl. ¶¶ 6- 9. Plaintiff has submitted evidence showing that it charges a licensing fee of $2,500 per image. Webb Decl. ¶ 8. Plaintiff therefore asserts that $2,500 should constitute the minimum amount of statutory damages awarded per work.

Plaintiff further asserts that because of the willfulness of BIC's infringing acts, the statutory damages should be trebled to $7,500 per work, for a total of $367,500. "Willful" infringement means "with knowledge that the defendant's conduct constitutes copyright infringement." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 & 1335 n.3 (9th Cir. 1990). This includes constructive knowledge. *See Spectravest, Inc. v. Fleet Street, Ltd.*, 1989 U.S. Dist. LEXIS 16594, at *12 (N. D. Cal. 1989) ("To find [an infringer's] actions willful, we need only determine whether she should have known that her actions would constitute infringement.").

In *Perfect 10, Inc. v. Talisman Communs., Inc.*, 2000 U.S. Dist. LEXIS 4564 (C.D. Cal. 2000), the plaintiff, a magazine publisher, sued a website for publishing its adult photographs on the Internet. The court

found that the infringement was willful because: (1) the magazine from which the photographs were taken displayed a clear copyright notice; and (2) the photographs themselves displayed the names of the models and other information. *Id.* at *10-11. The court then ordered an award of statutory damages in the amount $100,000 per infringing photograph. *Id*. at *11.

Here, the photographs at issue were displayed on a website maintained by Plaintiff. Plaintiff allows individuals who pay a subscription fee to download these photographs to their home computers. The website contains a "Legal Statement of Intellectual Property Rights." Webb Decl., Ex. B. The statement provides in relevant part:

> [a]ll web pages text and accompanying code is intellectual property and is copyrighted, having a retail value of $6000.00 US and is only available when ordered directly from the author. Each individual photograph or image contained on our web pages or portion thereof contained in this site has a retail value of $2,500 U.S. and is only available when ordered from the author. No portion of this site may be used or redistributed for commercial or personal purposes.

*Id*. The statement further provides that "[u]sers may not circumnavigate any technological means we have deployed to effectively control access on our site to protect our materials . . . and [doing so] is considered theft. Theft of any of the above materials will result in swift and severe legal action being taken . . . [including a civil suit for] copyright infringement." *Id*. In several places, the statement indicates that the website is protected by federal copyright laws. *Id*. Additionally, twenty-six of the infringed photographs contained Plaintiff's conspicuously displayed copyright mark. Compl. at ¶ 26. Given this, any visitor to Plaintiff's site would or should have known that the material contained in the site was protected by copyright.

Further, Plaintiff wrote BIC a cease-and-desist letter before the filing of the instant Complaint, specifically informing BIC that it was violating Plaintiff's copyrights and listing each such alleged act of infringement. Sperlein Decl. Exs. A, B. The letter also sought compensation for the acts of infringement and further stated that if BIC failed to satisfy its financial obligation, Plaintiff would file a complaint in federal court seeking damages. *Id*. While BIC removed the offending images, BIC nevertheless failed to respond to Plaintiff. *Id*. ¶ 9.

In light of the foregoing, the Court finds that BIC's infringement was willful. Since the Court is authorized to award up to $150,000 per copyright, the Court finds that Plaintiff's request for $7,500 in

damages per image is reasonable. Therefore, Plaintiff's request for a total of $367,500 in statutory damages for willful copyright infringement is GRANTED.

### 2. Misappropriation Claim

California Civil Code § 3344 provides that, "[a]ny person who knowingly uses another's . . . photograph . . . in any manner, on or in products, merchandise, or goods or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages . . . equal to the greater of seven hundred fifty dollars ($750) or the actual damages." Cal Civ. Code § 3344(a).[3] The remedies provided for by § 3344 are cumulative and shall be in addition to any others provided for by law. Cal. Civ. Code § 3344(g).

Here, under California Civil Code § 3344, Plaintiff is entitled to statutory damages of $750 for each unauthorized use of Plaintiff's photographs. Cal. Civ. § 3344(a); *see Perfect 10*, 2000 U.S. Dist. LEXIS 4564, at *11-12 (awarding statutory damages of $750 for each model's rights violated). Plaintiff argues that it should therefore be awarded damages in the amount of $54,000 because seventy-two (72) unique images of recognizable models appeared on BIC's website. In support of this, Plaintiff has provided the Court with forty-eight (48) photographs that BIC published on its website. Declaration of Gill Sperlein I.S.O. Supplemental Memorandum ("Supp. Sperlein Decl.") at ¶¶ 5-8, Exs. A and B. Plaintiff contends that thirty of the photographs contain one identifiable model each; nine of them contain two readily identifiable models; and eight photographs contain three readily identifiable models. *Id.* at ¶ 6. Plaintiff admits that a person is not "readily identifiable" if his face is obscured and there are no other unique characteristics, such as a tattoo. *Id.* ¶ 7. Upon reviewing Plaintiff's evidence, the Court finds that Plaintiff's evidence is sufficient to show that sixty-seven (67) readily identifiable images are present in the photographs. With respect to six of the photographs, however, the Court disagrees with Plaintiff and finds that the model's face or body is not readily identifiable. Accordingly, Plaintiff has proven that it is entitled to damages amounting to $50,250.[4]

---

[3] It is well established that the Copyright Act does not preempt this section of the California Code. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004-05 (9th Cir. 2001) (California Civil Code § 3344 not preempted by Copyright Act).

[4] $50,250 is equal to sixty-seven (67) photographs at $750 each.

**C.  Injunctive Relief.**

Plaintiff has also requested that the Court enter a permanent injunction against Defendant BIC. Specifically, Plaintiff requests that the Court enjoin Defendant BIC from: (1) reproducing Plaintiff's copyrighted works; (2) preparing derivative works based upon Plaintiff's copyrighted works; (3) distributing copies or phonorecords of Plaintiff's copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) performing any of Plaintiff's literary, musical, dramatic, or choreographic copyrighted works publicly; (5) displaying any of Plaintiff's literary, musical, dramatic, or choreographic copyrighted works publicly; and (6) performing any of Plaintiff's copyrighted sound recordings publicly. *See* Supp. Memo. at 3:19-4:5.

Section 502 of the Copyright Act provides in pertinent part: "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of § 1948 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. A court may issue an injunction as part of a default judgment. *See Sony Music Entertainment Inc. v. Elias*, 2004 WL 141959 * 4 (C.D. Cal. 2004).

To establish that it is entitled to a permanent injunction, Plaintiff must show that Defendant BIC's conduct is causing irreparable injury that cannot fully be compensated or measured in money, and that Plaintiff will continue to suffer such injury unless the Court enjoins BIC's continuing infringement of Plaintiff's copyrights. *Id.* In copyright claims, irreparable harm is presumed upon a showing of reasonable likelihood of success on the merits. *Id.* Since the default against Defendant BIC satisfies the element of success on the merits, Plaintiff need not show irreparable harm. *Id.*

Plaintiff must also show that it continues to suffer irreparable harm. Although it is significant that Plaintiff's supporting evidence establishes that three years have lapsed since Defendant BIC engaged in any infringing activities, BIC's failure to respond to this lawsuit suggests that Defendant does not take seriously the illegality of the infringing activity and therefore may continue to infringe. Thus, Plaintiff has demonstrated that an injunction is warranted.

However, despite this Court's explicit instructions, Plaintiff still has not clearly articulated a cognizable request for injunctive relief. In fact, the request for injunctive relief that is set forth in Plaintiff's Supplemental

11

Memorandum greatly exceeds the scope of Plaintiff's Complaint. Specifically, although Plaintiff's Complaint concerns photographs or moving images, Plaintiff is requesting that the Court enjoin Defendant BIC from displaying or performing any and all copyrighted "literary, musical, dramatic, and choreographic works." *See* Supp. Memo. at 3:26-4:5. However, Plaintiff has not demonstrated that it even owns any copyrighted "literary, musical, dramatic, or choreographic works." Accordingly, the Court hereby GRANTS Plaintiff's request for injunctive relief as follows: Defendant BIC is permanently enjoined from: (1) reproducing Plaintiff's copyrighted works; (2) preparing derivative works based upon Plaintiff's copyrighted works; and (3) distributing copies of Plaintiff's copyrighted works to the public by sale, transfer of ownership, rental, lease, or loan.

## CONCLUSION

Plaintiff's Application for Default Judgment is GRANTED as follows:

(1) Plaintiff is awarded damages in the amount of $417,750; and

(2) Defendant BIC is permanently enjoined from (a) reproducing Plaintiff's copyrighted works; (b) preparing derivative works based upon Plaintiff's copyrighted works; and (c) distributing copies of Plaintiff's copyrighted works to the public by sale, transfer of ownership, rental, lease, or loan.

IT IS SO ORDERED.

       /s/ Saundra Brown Armstrong

Dated: 5-16-05       SAUNDRA BROWN ARMSTRONG
United States District Judge